Good morning and may it please the court. Jesse Kanatic for Susan Dow. I will watch the clock with the goal of reserving four minutes. Your honors, via this appeal, Susan Dow asked this court to do three things. First, conclude that an insured is entitled to the full actual cash value of their loss as calculated by Safeco, except for the disputed general contractor over at a profit. Two, reverse and vacate the district court's order granting summary judgment to Safeco and three, reinstate the class claims and put Dow and the class where they were before the court granted summary judgment. Dow is not asking the court to conclude that Safeco is wrong when it excludes GCOP from roof-laded line items. That is a question for another day. Counsel, didn't Dow compensate your client for the GCOP in the bill that it paid? No, your honor, it did not. Didn't that set forth the GCOP for the repair company? I think it's important. There was an invoice issued. It's not clear from Safeco's expert report, which has a very comprehensive timeline of the record at SCR 97 through 99, that that had anything to do with Safeco's decisions about how it adjusted the case. Was it your client's position that you're entitled both to the replacement, the actual necessary replacement costs, and to the estimated cost? My client's position is that the roof-related GCOP is a component of the replacement value, but it must be paid at the actual cash value stage. And that is actually how Safeco handles every claim, and that's how Safeco handles Dow's claim. And I think we need to clarify something here. Reading Safeco's brief, one could be left with the impression that Dow never made an ACV claim and Safeco never issued an ACV payment. That is false. Safeco issued at least four ACV payments to Susan Dow, including an ACV payment that was based on the September 2019 estimate that Safeco now claims is irrelevant. And the way that came about is Safeco went out in late August 2019. They sent two adjusters out to try and reconcile the party's differing version of the scope of the loss. And those adjusters at first included $22,000 for the replacement value of Dow's roof, but then they realized they had made a mistake. They had under-calculated the size of Susan Dow's roof. So they increased the replacement cost estimate. But didn't that estimate account take into account or estimate based on work that was not actually performed? That's correct, Your Honor. And the... How can the ACV ever exceed the actual cost of repair? The repairs have been completed. How can you get more money above what was done to complete the repairs? Because the policy does not subsequently reduce an insurer's entitlement to the full actual cash value just because they make repairs that cost less than Safeco estimates. So what do you make of this provision where it says actual cash value at the time of loss but not exceeding the amount necessary to repair or replace? That's not what the actual cash value settlement provision says, Your Honor. That's underneath the replacement cost value provision, which is totally separate. And the language you just quoted is a subheading of the replacement cost value stage. The actual cash value stage says you may disregard the replacement cost coverage. And there's no provision in there that allows Safeco to go back and reduce the amount an insurer is owed at the cash value stage. If Safeco wanted to write a policy that did that, I suppose it's possible. But that is not what the policy says here. It's also inconsistent with how Safeco handles all claims, including this claim. They issued in September 2019 an additional actual cash value payment to Susan Dow when they realized that they had under-calculated the size of her roof by many hundred square feet. They don't say how much, but they say several squares. And a square is 100 square feet. And this is all on SCR 9799. Safeco put this in the record on appeal, and it shows that Safeco's argument that Dow didn't make an ACB claim is completely at odds with Safeco's own expert report. Moreover, besides the plain language of the policy, it has to be strictly construed against Safeco, and any doubt about coverage must be resolved in favor of extending coverage. The idea that an insured like Susan Dow subsequently completes repairs for less than actual cash value payment doesn't affect her entitlement to the full actual cash value for loss. Contend she's entitled to both the replacement cost, the actual necessary cost to replace the roof, and the ACB payment? Yes, Your Honor. Our position is that an insured is always entitled to the full cash value of their loss, regardless of how much it costs to complete repairs. They're entitled to a slightly different, then you want to answer my question? No. So she's not entitled to both. She absolutely can be entitled to both. How is that? Because the actual cash value is an estimate. So a very good example of this is the Hicks case from the sixth. I mean, both on top of each other, the estimate plus the replacement. She's not entitled to the ACB plus the cost of replacing the roof. She's an insured. Safeco automatically makes ACB payments for what it estimates the repairs will cost, deducting only depreciation, which is a difference in value from a 10-year-old roof to a new roof, right? But she doesn't have to use that money to repair. No. But if she does, what is she entitled to? She's entitled to the full actual cash value, regardless of whether she makes a claim under the RCV claim later. And so her RCV claim in this case was actually, including overhead and profit, what she actually was billed by her contractor at the early stages was, Safeco concedes in its expert report again, that its own estimate of the ACB of her roof exceeded what she was paid. Well, but it was incorrect at first, but then they did pay the full amount. In fact, didn't your client get more than the replacement value? She got more than she incurred to make the repairs, yes. But that's a common theme running through all of the GCOP cases that have, for the last 20 years, that regardless of what happens later, an insurer is entitled to have the insurer correctly calculate the actual cash value of their loss, actual replacement cost value of their loss, and then make an ACV payment based on that amount. GCOP is a component of the replacement cost value, but Safeco pays it at the actual cash value stage when they make an initial determination that the repairs are complex enough to reasonably likely require the services of a general contractor. That's how they explain it to their insureds. Is the September determination an initial determination after the repairs have been completed? No, what happened is, the timeline shows that right after, the day after Dow reported the loss in October of 2018, Safeco sent an adjuster out. The next day after the adjuster was there, he calculated the replacement cost value, and the very next day, without Dow asking for it, Safeco issued an actual cash value payment. At that time, it was only $14,000. So, Safeco clearly miscalculated the overall value of the claim. And over the next 10 months, Safeco issued at least four ACV payments, and they would do it automatically when they readjusted the loss and came up with a new replacement cost value. They would send out a check for the actual cash value. And so, all of the GCOP cases that we cite in our brief, and all of the class action cases related to the calculation of ACV, stand for the same rule that an insured's entitlement to the full actual cash value of their loss cannot be reduced by subsequent events, regardless if they spend more than, less than. But ultimately, it seems like you're trying to get a percentage based on an estimate that is bogus. I mean, it's not an estimate if the work has already been done, and then they come up with a number that's based on assumptions that don't reflect the work that's done. I just don't understand how that can happen. Well, the estimate that Safeco says is irrelevant is an estimate that they came up with later to actually reflect what they believed. I mean, it's crazy that they make an estimate on work that's already been done. It happened. I think, Your Honor, the issue here is that if Safeco can convince the Court that an insured's entitlement to ACV goes away if they make a replacement cost value claim, if they recover any depreciation, now all of a sudden Safeco doesn't have an obligation to correctly calculate the value of their loss. I mean, all of these cases and the way Safeco handles it show that insured's get the full ACV of their loss no matter what. But it's your position that the policy does not anywhere cap the ACV at the actual cost? Correct, Your Honor. If you look at the structure of the policy in our reply brief, we have, you know, a picture of it in context, because I don't think Safeco describes it in the proper context. The part about the amount actually necessarily incurred is a subheading to the replacement cost value definition. The ACV step, again, says an insured can disregard it. It doesn't say there's no temporal limitation on it. It doesn't say unless you go and spend less in the future. Again, Safeco theoretically could write a policy that says that, but they didn't. I would like to talk about the Hicks case from the Sixth Circuit for just one moment, if I may. It's a very recent case and it was a class action that involved labor depreciation. And it's very much on point with this case because there were two plaintiffs and the insurer calculated the replacement cost value. I'm sorry, what is the name of that case again? Hicks. And there were two class members. One made a replacement cost value claim that her repairs cost less, like less than half of what she was paid for the actual cash value of that component of her claim. And she sued the insurer saying, you miscalculated my ACV because of the way you handled depreciation. The insurer made the same argument that Safeco's making here in the Sixth Circuit, said, no, it doesn't matter. There's nothing in the policy that allows Safeco to reduce the insurer's entitlement to the actual cash value. It doesn't matter if they make a replacement cost claim or not. Okay, but in Hicks, I guess Williams did not rebuild his home. Williams did not, but the other plaintiff did. The other plaintiff, it was about screens. She was 700-something dollars to repair some screens, and she repaired them for $300, recovered the withheld depreciation, and sued Safeco saying, you should not have withheld labor depreciation. And the court said, it doesn't matter that she spent less later. This is the common thread running through all the GCOP cases, and it's the same arguments that the insureds always make. And they say, well, we can't treat it as a class because we may have miscalculated or something. And every court that has considered this has said, no, that's not true. And Higgins, or I'm sorry, Riggins and Goleman, they're district court cases, I understand, from different circuits, but they're interpreting policy language that cannot be differentiated from the policy language here. And they reached the same conclusion that what an insurer does after they receive their ACV payment cannot reduce their opportunity to go back and challenge the insurer's calculation of their loss. And unless the court has any questions, I'd like to reserve my time. All right. Thank you, counsel. Good morning, Your Honors. May it please the court, Mark Fuller for Appalachia Safeco. The district court correctly entered summary judgment on Dow's individual claims for breach of contract and violation of the Montana UTPA. Those claims seek payment of GCOP relating to the repair of Dow's roof, but Dow has already been paid the 20 percent GCOP that she actually incurred in connection with that roof repair. It is undisputed that the repairs to Dow's roof were completed before May 1st. If that's undisputed, why is Safeco issuing estimates in September for work that's already been done, and the estimate has assumptions that don't match what actually was done, and that have numbers that are phantom? You've created this whole problem by doing that. Why was that number generated? What does the record say about why that happened? We don't have record evidence as to why that number was generated. I would note that as to the roof, the number, which is $28,623, is the exact same that Safeco actually paid for the roof, and I think some of the explanation here is that today in this case, we are laser focused on just the roof repair, but this was a very complex repair project. Doesn't it have an assumption about numbers of tiles used that don't match what actually happened in that estimate? That's correct. There is a discrepancy between the number of tiles that appear in the September 2019 estimate and the number of tiles that appeared earlier. The key undisputed fact, though, is that by May 1st, 2019, the roof was totally repaired. There weren't additional tiles that still needed to be repaired, and everybody agrees to that. Dow, in her deposition, says, yes, there was no further work to be done. Her general contractor, John Hooley, says, yes, there was no further work to be done. The roof was completely repaired by May 1st, 2019, and that May 1st, 2019 invoice includes all of the costs. So what's the clearest policy language that, in your view, establishes that the ACV is capped at the actual cost? The ACV isn't always capped at the actual cost, but for Dow it is, and this is why. She initially receives an ACV payment, and she agrees that she received an ACV payment prior to starting the roof repair. She then proceeds to the repair, and the actual repair cost exceeds the original ACV payment. So then she reaches out to Safeco. She takes the May 1st, 2019 invoice that she received from her general contractor, which was the full bill for the full repair, sends it to Safeco, and testifies in deposition that that was a request that Safeco pay that. And so when she does that, what she's doing is she's asking for Safeco to pay the additional liability that she incurred in connection with the actual repairs. So that moves you from Section 5A.5 of the policy, which is the reference that they made earlier on as to the actual cash value, and she goes from Step 1, which is an ACV step, to Step 2, which is the RCV stage. What policy language tells us that we move from Step 1 to Step 2? It's Section 5A.5. It allows the insured to take the ACV payment, and if the actual repair costs exceed 5A.5. Okay. And so if the actual repair costs exceed that, then you can make a claim for what that section refers to as additional liability. And so Dow was asking in deposition, was this a claim, whenever you submitted the May 1, 2019 invoice to Safeco, was this a claim for additional liability that you wanted Safeco to cover? And she said yes. And so when she does that, then she's no longer an ACV claimant. She's an RCV claimant. And as a result, she goes from 5A.5 to 5A.1. Those are the RCV-related provisions, and those include the cap on Safeco's liability, which is at 5A.1.C., which is Safeco is not obligated to pay anything beyond what Dow actually and necessarily incurred. And again, the record is undisputed, both through Dow's testimony in deposition and her general contractor's testimony in deposition, that when Safeco paid enough to cover that May 1, 2019 invoice, it was paying more than, but at least as much as the actual actually incurred cost. And so as a result, there's no more for Safeco to pay. So it sounds like Safeco created its own problem by what it did in September of 2019. Well, again, I think today, as we are looking laser-like at this roof repair, we're losing track of the fact that this was a complex repair, there were other aspects of the repair, and there's just this single template. And so as the repair is ongoing, and the roof is finished several months before some of the other repairs even start, Dow is— How do you distinguish the Hicks case that your opposing counsel relies on? Sure. Well, so Hicks is a Sixth Circuit decision. It's a split panel. And as to its key holding, the one that they rely on, that holding is contrary to what this court decided in the Lara case. And so let me explain. So in Hicks, an insured gets an ACV payment that they claim is insufficient, but can go on and then recover at the RCV stage the amount that was withheld. Hicks views that as an issue of individualized damages and says that's not going to defeat the claim entirely, and it's not going to create a predominance issue because it's just a matter of each individual class member might have a little bit different damages. That was partly because the plaintiff in Hicks made a slightly different claim in terms of what the actual damages were. Lara, though, is entirely different. Lara involves an auto insurance claim, but it also involves a challenge to the insurer's determination of actual cash value. And the theory in Lara was similar to the theory here, that at the ACV stage, you're underpaying me. But if the court recognized in Lara, this was a multi-step process. And as negotiations continued or possibly the insured invoked the appraisal process, they could, at some later stage, get back the amount that they believed was illegally withheld from them. And so the Lara court holds that that's not just an individualized damages issue, it's a no damages issue. And when you're talking about a breach of contract claim, that means you don't have a contract claim. If you can't show any damages, you don't have a contract claim. And if you can't show any injury, you don't have any claim under, in that case, it was the Washington CPA. Here it's the Montana UTPA. But both statutes require a showing of injury. It's notable that Dow in her reply brief and this morning doesn't reference Lara at all, relying entirely on Hicks and then in their brief, another case called Stewart. And I would just note that if you go back to the briefing in the Lara case, the plaintiff in that case also cited Hicks and Stewart, made the exact same argument, and said that for those reasons, this is not an issue that defeats the claim entirely or defeats class certification. If you look at page 32 of the plaintiff's opening brief, in Lara, they cite Hicks and Stewart. And at page 37 of their reply brief, they cite Hicks and Stewart. But that argument lost in Lara, and it should lose here for the exact same reasons. That, strikingly, is a little strange in a case where Dow got paid by Safeco the full amount to repair her roof that she's now claiming she didn't get paid enough. Would it increase the general contractor overhead and profit if she were able to recover here? I mean, would it add it to what she already recovered in the first part? Well, when the second payment was made, it fully covered her roof loss? Yes, Your Honor. The general contractor would get a double dip of GCOP. So basically, the general contractor charged 20% GCOP at the May 1st, 2019 stage, after the roof repair was entirely complete. And then, four months later, without doing any additional work, Dow receives this estimate, hands it over to her general contractor. The general contractor, opportunistically, makes another claim for GCOP and says, well, if this is the number, then I want another 20%. So yes, the general contractor is asking for more GCOP, despite the fact that he did no additional work after May 1st, 2019. I gather there's no evidence in the record that the general contractor actually sued Dow for that additional amount. Is there? Well, the general contractor was asked in deposition, did you ever send a demand letter for this? And he said no. He was unwilling to commit to ever attempting to recover that from Dow. And so that's another reason why she has not actually incurred this amount and therefore isn't entitled to payment. Your Honors, if there are no further questions on the summary judgment, then I'll move on to class certification. Lara, the case I just mentioned, is a class certification case. It was a review of the denial of a motion for class certification. And again, the same issues that this Court identified in Lara, which came out in 2022, which was after the District Court certified the class in this case. So the District Court did not have the benefit of this Court's guidance in Lara. But those same basic problems are present here. As to the fact that this is a multi-step process, where you have plaintiffs who might have some, the District Court considered it a technical theory of breach at the ACV stage, it's undisputed that this is a multi-step process and many of those insureds, like Dow herself, are going to recover that allegedly illegally withheld amount. And so as a result, have no injury, have no damages, and can't be in the class. We would only need to reach the class certification issue if we reverse the summary judgment, is that correct? That's correct, Your Honor. So the District Court, what she did was grant individual summary judgment against Dow. And then told Dow's counsel, you have 60 days to find a new plaintiff. She has no claim, so she can't be the plaintiff anymore. They were diligent. They looked for a new plaintiff. And they reported back to the District Court that despite their best efforts, they were unable to find anyone who did not proceed to the RCV stage and was not fully compensated at that stage and was willing to be a class plaintiff. So at that point, the District Court decertified the previously certified class. Why did it have to be someone who did not proceed to the RCV stage? Well, I mean, I think a kind of more technical description would be did not proceed to the RCV stage and recoup the additional cost. So an insured that gets an ACV payment and then either doesn't have the repairs done or has the repairs done for less than the ACV payment, they get to keep the difference. But here where you've got an insured like Dow who gets an ACV payment and then has the repairs done, but it costs more and claims those additional costs, then there's no damages. There's no injury, and so there's no viable claim. And so that's why you need a plaintiff who did not proceed to RCV and collect that additional liability that takes them into Section 5A1C of the policy. So I'm going to assume because this was a storm that caused all this damage that there were other people whose homes were damaged in the storm. And I'm wondering if there's anything in the record about how many of those individuals were actually covered by Safeco. There's nothing in the record to answer Your Honor's question. But, yes, this was a storm. Originally the estimate was for about $17,000 to repair the roof. Dow, working with her general contractor almost a year later, ends up with an insurance recovery of more than $100,000. She got a new roof. She got new windows. She got all new siding, new gutters, new downspouts. She got much more than what she was originally estimated to have incurred at the ACV stage. I hope that's in the record. That is in the record. Okay. That is in the record. And then the second issue in Laura that also applies here is that at the end of the day, even if you ignore the fact that a lot of these insurers aren't going to have any damages or any injury as a result of having proceeded to RCV and collected the additional liability, the fundamental issue is whether or not at the ACV stage they're owed more money. And in Laura there was a theory as to why the insurer was incorrectly calculating the ACV amount. And the court said, well, even if they're incorrectly calculating it on that measure, there are still other parts to the calculation which could end up making the overall ACV payment just right or too much. And so that analysis is going to be an individualized analysis. You're going to have to look at, in that case, the car and the car's value. Here you have a similarly individualized analysis. Even under the plaintiff's theory, GCOP is only owed where it's reasonably likely that the repair project is going to require the services of a general contractor. And that determination, according to the expert evidence that was submitted at the class certification stage, is that the determination is inherently fact specific. You have to look at the complexity of the repair. You have to look at the timing of the repair in order to determine whether or not you need a general contractor and therefore whether or not GCOP must be paid. I see my time is up. If the court doesn't have any other questions, we would respectfully request that the court affirm the district court's order in all respects. Thank you, counsel. Mr. Kotedik. Thank you. This case is nothing like Laura. In Laura, the insureds challenged the way the insured reached their ACV estimate and said, you — we don't think you valued our car correctly. This case does not require any individualized determination as to class membership or as to liability. In fact, the inquiry that SAFCO just mentioned about whether an insured is entitled to GCOP, the class only includes insureds where SAFCO already made that determination, where it made that determination and where it paid GCOP except for roof-related line items. This case is challenging SAFCO's pattern and practice and systematic refusal to pay GOC at the — GCOP on all roof-related line items with the ACV payment when it otherwise concludes that an insured has repairs that are going to be complex enough — What's your response to the argument that ACV is an estimate and that after being paid based on an estimate, your client then submitted a bill for actual costs and therefore shifted in paragraph 5 to the RCV provisions? I guess my answer to that is when SAFCO issued the September 2019 estimate and the subsequent ACV payment, it was because it realized it miscalculated the size of Dow's roof. So it was fixing its own mistake. And the fact that Dow completed her repairs for less than that amount is not relevant to the proper calculation of ACV. Every case of — ACV says shall mean the cost of materials and labor that would be necessary to repair the damage. So that language is conditional and suggests that the determination is being made at a time when the repairs have not been completed. And that's not true with respect to the September estimate. I think the problem, Your Honor, is SAFCO is backfilling what happened with what its lawyers figured out during this case. Again, if you look at the SAFCO's experts' reconstruction of the timeline of the payments, SCR 9799, there's no discussion about that payment. There's no claim that SAFCO somehow made a mistake or shouldn't have issued the ACV payment. It just fixed its earlier mistake. And this SAFCO's argument here has been addressed and rejected by every GCOP case, including Salazen, Trishler, Mills, Parkway, Associates, Gilderman. All of them involve the same issue where the insured says you didn't actually incur those costs. You're not entitled to them. The class claims here are based on an objective determination that SAFCO already made and the amounts that are owed can be calculated to some certain based on SAFCO's own estimate. And we accept SAFCO's calculation of the proper ACV of every class member's loss except for the disputed GCOP, which is a pattern, practice, and policy that SAFCO applies universally in Montana. Thank you. Thank you very much, Counsel. Dow v. SAFCO Insurance will be submitted.
judges: Gilman, WARDLAW, COLLINS